The next case is Woodway USA v. LifeCORE Fitness, 2025, 1323, and 1345. Ms. Rieger, let's wait until opposing counsel is sat down. Please proceed. Good morning, Your Honors. May it be with the Court. Sarah Rieger, Foley Lender, LLP for Appellant and Patent Owner, Woodway USA, Inc. There are a variety of reasons why the Board's obviousness, determination, and the underlying IPR should be reversed or, at a minimum, vacated and remanded, but there are three in particular that I would like to discuss today. The first is that the Board adopted an overbroad and unsupported understanding of the claim term running surface under the plain and ordinary meaning, Chickering, which is the primary reference relied on by the Board and the petitioner below, does not disclose a curved running surface as required by every rejected claim. Second, the Board's motivation to combine analysis for the combination of Chickering with the secondary references is improperly hindsight-driven. The specific problem the Board identified as supplying the motivation to combine comes from Woodway's patent itself, not from the prior art, and the Board further ignored clear teachings in the prior art that would have dissuaded Posita from combining the prior art as alleged. And then finally, the Board also mishandled secondary considerations of non-obviousness by applying the wrong nexus analysis and crediting attorney argument over unrebutted evidence. And I will begin with the running surface issue. The claims in this case in the 884 patent each require a manually powered treadmill with a running surface or a running belt wherein the running belt comprises a curved running surface. So we have two distinct claim limitations here. There is a running belt and then a portion of the running belt is the running surface. The question is not whether the belt has some curvature anywhere. It is whether the running surface... For a plain construction running surface? We did not, Your Honor. Both parties asserted at least at the outset that it should be the plain and ordinary meaning. The primary dispute here is what that plain and ordinary meaning is. What is your view on...  Go ahead. No, you go ahead. I was just going to ask, what do you think the standard of review that applies here is? And the reason why I ask is because we've got parties saying to the Board, give it the plain and ordinary meaning. And then the Board says, I'm sorry, Patent Owner, but your plain and ordinary meaning is inconsistent with the specification. And, you know, I mean, and so it rejects your plain and ordinary meaning. Is that a legal conclusion or a factual conclusion? I believe it is a legal conclusion, Your Honor. It is, at the end of the day, essentially an implicit claim construction. What constitutes the plain and ordinary meaning? We get this argument every time the parties ask for plain and ordinary meaning. And then the Board makes a ruling saying the prior art discloses that plain and ordinary meaning. And then you come back after the fact and argue that was an implicit legal construction to get a better standard of review. Why isn't this just substantial evidence? You didn't ask for construction. So plain and ordinary meaning of curved running service is not particularly technical or hard to figure out what it is. And then we look at the evidence and say the Board properly found that Chickering has a curved running service. I understand what you're trying to say, which is there's a difference between the curvature of the belt and where you would run. You didn't ask for that. And once you're there, there's nothing that suggests that at least figure two in Chickering doesn't have a belt that curves and it is part of the curved running service. So part of the issue here that might distinguish it from a case where there is just a simple dispute over what the plain and ordinary meaning of a term is, is the Board's interpretation not only adopted what in our view is the incorrect plain and ordinary meaning, but also conflated those two terms. There's principles of... You didn't ask for that. If you want that, you have to ask for that. If we're stuck with plain and ordinary meaning, then we're going to look at the Board's conclusion that the prior art discloses a curved running surface. And we're going to say, is there substantial evidence for that conclusion? What's wrong? Talk to me in substantial evidence terms. Don't talk to me in claim construction. Sure. Lose on that point with me. Why doesn't Chickering... Why isn't Chickering substantial evidence for the curved running surface? So the primary issue in my view, Your Honor, is the Board... The Board, not essentially, they did conclude that the intrinsic evidence in this case contradicts the plain and ordinary meaning offered by Woodway. And that is just plainly incorrect as a matter of... Whether as a matter of fact or law. Why? Because I look at Figure 7a. I think this is the most difficult part of your case. On page A76, there's Figure 7a. And 7a is discussed and is depicting the running surface. And then it takes the running surface and it says it includes Part 72, Part 76, and Part 74, which is the entire top of the running belt of which the running surface is included. Right? And so it's not as if the Board said the running surface is the same thing as the running belt. And then the figure itself shows that you've got Part 72, 76, and 74. And the foot doesn't hit all of those parts when it's describing what the running surface is. So I just... I'm having a hard time understanding how your construction supported it all. Respectfully, Your Honor, I don't believe there is any... Sorry, that was a mouthful. Not a problem. Respectfully, I don't believe there is support in the specification for this idea that the runner's foot is not going to hit all of these sections of these running belt configurations or in any of the other Figure 7 configurations. When you look at the description of Figure 7a, and it's helpful in this context to also consider the discussion of running surface when discussing Figure 5, which is, of course, more of a single, more traditional what you would think if you just think of a curved running surface. But it says 7a is a schematic view of the running surface of the manual treadmill. It's using your word. And then it's the entire thing. It's not just where the foot lands, it appears to me. Tell me why that understanding is wrong. Well, so 7a, if you continue down, it discusses in, I believe this is column 8, going down... I would just say it's 7a through 7j, all of them, for the running surface, which is the entire running belt on the top of the treadmill. I don't believe it is, though, Your Honor. I mean, it is certainly a portion of the top surface, but it's not going to include, for example, the top surface right by the ends of the rollers at the very end, where I don't think there's any dispute that the runner's feet are never intended to touch those portions. And if you look at the discussion of 7a and the other figure... It shows portion 72, 76, and 74, right? I mean, that's a large amount of that running belt is considered the running surface. Yes, it is, in these particular embodiments. And again, that is kind of where it becomes the issue when you get to checkering. When you look at checkering, the vast majority of the running belt on that top surface is flat. There are two planes. They meet at a very narrow point at the bottom of those two planes. In the single belt embodiment, yes, there is a very, as Woodway's expert said, there is a very, very small curve in the belt. But what checkering discloses in its written description is that the user's feet are not really intended to ever make contact with that. The user is not running on that portion of the treadmill. The user is running on this downward-sloping forward portion and then is using this upward-sloping rearward portion as a deceleration zone. The concern I have, and I understand the argument you're making in comparing the figures in your specification to the figure of checkering, but I don't necessarily see where you're claim has said the entire running surface must be curved. It just has to be a curved running surface, meaning that if the curve is just in portion 74, that still would be a curved running surface. I do not disagree, Your Honor. It would still be a curved running surface if only a portion of the surface is curved. The problem is that checkering does not disclose a curve in the portion of the belt where the user is actually going, is actually running. You're assuming your claim construction means that it has to be where the foot goes, right? So that's your argument only works if your construction is correct in light of what is described in the specification and what the ordinary meaning of running surface would be. To an extent, yes, Your Honor. It is certainly heavily reliant on the idea that the running surface, as you've agreed, is the surface where the user is intended to place their feet when the treadmill is in normal use. You're saying both experts, your position is both experts in this case adopted the claim construction you're asking the court to adopt? Yes. The life core or assaults, the due business as assaults, so I may use both terms. I apologize if that is confusing, purported to take a different view in his expert declarations, but when asked at his deposition to describe what a running surface is, he testified that, I mean he essentially provided a definition that is the same as what Woodway's expert testified. He said the running surface is generally speaking the top of the treadmill where the user is expected to place their feet. That's at appendix 5068, page 33, lines 8 to 10. I mean, ultimately at the end of the day, the board's construction is directly contrary to that extrinsic evidence and there's nothing in the specification that is actually contradictory to that. There's nothing in the specification that describes the running surface as a place where the user wouldn't place their feet. I don't think there's anything in figure 7, figure 5, anything else that would describe that. What is your basis for saying that figure 5 and figure 7, even where, I mean if you look at where 72 is in figure 5, where's the disclosure that the person's foot would go there so close to roller 44? Sure, if you look at, this is appendix 94, which is the 884 patent, column 7 approximately at lines 37 or 38, figure 5 illustrates a number of possible locations where a user may position her feet. A through C indicate locations along the front portion 72 of the running surface 70 where a user may place their weight bearing foot. And if you look at figure 7, that's the entirety of 72, is A through C. So that is in particular where we believe the patent is expressly disclosing this particular feature. When you're into your rebuttal time, you can continue or save it. I will save for rebuttal, Your Honor. Thank you. Mr. Turner. All right, may it please the Court, I'm Andrew Turner for Life Corps, Uzziah Pelley here. All right, so we focused on the three main issues in this case here. One, the... If it's clear from Chickering that you're not supposed to run on the curved portion, why is that substantial evidence for the Board's conclusion? So it's our position it's not clear from Chickering that you don't run on the curved position. So Chickering describes these two embodiments. One's a two-belt embodiment. Okay, yeah, I don't care about the two-belt embodiment. That clearly doesn't disclose anything. Let's talk about the one-belt embodiment. So the one-belt embodiment, so Chickering does not disclose that you don't step on the curved portion of the Chickering belt. There's one sentence in the spec that's referencing you don't step on the gap. And even in figure 1 of Chickering, it seems to show that there's a foot stepping on the gap of the two-belt embodiment. So your view is at least the one-belt version, there's no kind of disclosure that says don't step on the back part of it, and that's substantial evidence then for the running surface in Chickering being curved. Well that's, as far as their response, as far as the substantial evidence, so Chickering discloses that the belt follows the curve of the rollers. And it's a heavy belt, so it follows that profile. And also, it's undisputed that the belt is curved. So even Woodway's expert admitted that there is a small curve in the middle of that, the figure, the single-belt embodiment, and that's Appendix 37, referencing Appendix plate 6505 at 24. So that was during his deposition. Do I understand correctly that your view is, even if the board had adopted the construction argued by the appellant here today, that Chickering would still disclose the running surface? Is that what you're saying? Yes, that it still would disclose the curved running surface. Now we think it's improper- What evidence do you have of that? Well, so we think it's- I mean, is there an expert saying that, based on, I mean, I see what you're saying about Figure 1, but- Okay. The expert's saying that it's, their construction requiring the runner's intent, or just- No, saying that in Chickering in Figure 3, a person of ordinary skill would understand that the foot could go where the curve is. Right. So that's, so Chickering does not expressly disclose that the foot goes, you know, right where that curve is. I mean, we think it's, from the Figure 1 embodiment where they actually show a foot, it looks like the foot is at the, the toes are on the curve. I mean, I hear what you're saying, but I'm wondering, is there any expert testimony saying what you're saying right now? You're an advocate before us saying, look at Figure 1, there's a foot where the curve would be in Figure 3, and I think that makes some sense to me, but I'm wondering what is the evidence from a person of ordinary skill in the art? Because you were very clear that Chickering doesn't say the foot goes there, but I just want to see what we've got in the record. Is there expert testimony on that? Your Honor, I'm not sure. I'm not aware of any right now. Okay. But that's, so as far as the construction, we think the construction that required runner's intent would be incorrect. And the implied, the plain and ordinary meaning that the board did apply was they rejected Woodway's arguments based on the intrinsic record. For example- Is your view, I mean, is your view, is this a legal question or is it a question where we should be looking at it for substantial evidence since nobody asked the court, the board to construe this term? I mean, since it wasn't an express construction, my, my understanding is it's a, it's a factual question. It's a, we look at substantial evidence. But what about the fact that the board looked at intrinsic evidence, which ordinarily would be something reviewed de novo, in making that analysis and conclusion? Well, that's, so that's, if, if, Your Honors, you do consider this a, you know, a claim construction issue, I think the PTAB did go through a Phillips analysis. They did consider the intrinsic record. They looked at the claims. They said the claims don't require runner's intent, so they rejected that position. And then as we, as you went for, through the specification, the Figure 7 embodiment describes a wide variety of different profiles. And there's even more express disclosure in the spec regarding those where in the 884 patent they even disclosed that a linear portion may replace all or a portion of the curve or that multiple linear portions may be included in a profile of a non-planar surface. They also disclosed varying relative length of the different portions of the curve. And that's all column 10. And those, that's what the board cites in the final written decision at 38. So they cite a lot of these different sections for the, that the 884 patent describes very broad profiles. So to construe the claims to somehow exclude the chickering profile when it describes such a wide variety of different running surfaces would be incorrect. All right. So next, I'll proceed, if there's no more questions on running surface, I'll go to rationale to combine. Go ahead. Okay. Pardon? Please continue. Okay. Okay. Do you want to address that? I mean, if they... She didn't address it. So if you bring it up, she gets rebuttal. If you don't bring it up, she doesn't get rebuttal unless the presiding judge is being very generous. Okay. And he gets to decide. So. All right. So then I think that's the only issue that was really addressed. So I guess I'll... Sit down. It's your argument. Okay. For the next eight minutes and 36 seconds. Well, then I'll save your time. All right. All right. I'll sit down. Ms. Rieger has some rebuttals on. Yes. Thank you, Your Honor. With respect to what Mr. Turner just argued with respect to life course positions, the chickering embodiments here, the two belt, whether it's the two belt embodiment or the single belt embodiment are structured in effectively the same way. They are both dual planar designs, not curved designs. And Woodway's expert on this, excuse me, Dr. Blair testified extensively about this during his deposition immediately following the little snippet that Mr. Turner referenced. For about five pages of his deposition, he explained how even though there is this tiny curve in the belt, it is not a portion of the belt where a user is expected to place their feet precisely because of the disclosure I mentioned in my opening remarks. And I mean, just unequivocally testified that this is not a position where a post-eta would understand that a person using this... You're talking, if we were speaking English, you're talking about a person of ordinary skill? Yes. Yes. Sorry, Your Honor. And that, in this case, Dr. Blair's testimony, that is actual evidence, not attorney argument. Life Corps attorneys have mentioned this figure one, this ambiguous appearing and frankly, figure one, whether the foot touches this portion of... You're arguing that that suggests no skilled artisan could conclude that chickering discloses a curved running surface. Because I'm not going to get into the clem construction with you. You have to win with me on substantial evidence. So you have to show that nobody would understand the running surface in chickering as curved. I believe that is the case, Your Honor. And it relates to that portion of chickering discussing how, with user's gait, the arc would naturally not touch that portion of the running belt or running belts where that curve is located. Isn't that the whole point of the curve is to have a safety feature so that if the runner does get there, they move forward so they don't fall off? It may not be the typical way you run, but it's certainly understood that runners are going to hit that at least some point in the time. That is not the purpose of the curve in the running belt in chickering. That's the purpose of this downwardly, the rearward slope, which is a flat plane at the back of chickering. And something that Mr. Turner mentioned is actually very important. He mentions in the of the 884 patent, these alternative profiles that are permitted by the, actually, the bearing rails, not the running surface. But in none of those embodiments are there only linear portions. Every single one has at least one portion that is actually curved and not this tiny little curve where the runner would never place their feet as in chickering. And I see I'm out of time, but if there are any other questions. Thank you very much, both counsel. The case is submitted.